UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 8000
Washington, D.C. 20530,

STATE OF ILLINOIS,
by its Attorney General, Lisa Madigan,
100 West Randolph Street
Chicago, Illinois 60601,

STATE OF IOWA,
Iowa Department of Justice
Special Litigation Division
Hoover Office Building-Second Floor
1305 East Walnut Street
Des Moines, Iowa 50319, *and*

STATE OF MISSOURI,
Office of the Attorney General
Consumer Protection Division
Post Office Box 899
Jefferson City, Missouri 65102
   *Plaintiffs*,

   v.

TYSON FOODS, INC.,
2200 Don Tyson Parkway
Springdale, Arkansas 72762-6999, *and*

THE HILLSHIRE BRANDS COMPANY,
400 South Jefferson Street
Chicago, Illinois 60607
   *Defendants*.

CASE:

JUDGE:

FILED:

# **COMPLAINT**

The United States of America, acting under the direction of the Attorney General of the United States, and the States of Illinois, Iowa, and Missouri (collectively,

"Plaintiffs") bring this civil antitrust action to enjoin the proposed acquisition by Tyson Foods, Inc. ("Tyson") of The Hillshire Brands Company ("Hillshire") (collectively, "Defendants") and to obtain other equitable relief.  Plaintiffs allege as follows:

## I.

## NATURE OF THE ACTION

1. Tyson and Hillshire compete against each other and against others to procure sows from farmers in the United States.  Farmers earn approximately $700 million annually from sales of sows and rely on competition among purchasers to ensure competitive prices.  Tyson's proposed acquisition of Hillshire would eliminate head-to-head competition between the companies and create a firm that would account for over a third of all sows purchased from farmers in the United States.

2. Sows are female pigs that are raised for the purpose of breeding hogs.  At the end of their productive breeding lives, sows are sold for slaughter.  Packers such as Hillshire use the meat from sows in the production of pork sausage.  In contrast, hogs are swine raised solely for the purpose of slaughter; their meat is typically used for pork products other than sausage.

3. Tyson, through its Heinold Hog Markets division ("Heinold"), purchases sows from farmers and re-sells them to packers, including Hillshire.  Tyson has buying stations located throughout the Midwest that procure sows directly from local farmers, sort the sows according to different characteristics, and ship them to packers according to each packer's particular requirements.  Packers overwhelmingly use marketers such as Heinold to procure sows rather than purchase directly from farmers due to the efficiencies marketers offer in terms of sorting, shipping, and other services.  Hillshire is

one of the few packers that purchases sows directly from farmers; as such, it competes directly against Heinold to procure sows from farmers.

4.      On July 1, 2014, Tyson and Hillshire entered into a definitive agreement under which Tyson will acquire Hillshire.  Unless enjoined, the proposed acquisition is likely to lessen competition substantially in the market for the purchase of sows from farmers in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.

## JURISDICTION AND VENUE

5.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, and the Plaintiff States bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.  The Plaintiff States, by and through their respective Attorneys General, bring this action as *parens patriae* on behalf of the citizens, general welfare, and economy of each of their states.

6.      Defendants are engaged in interstate commerce and in activities substantially affecting interstate commerce.  Tyson, through Heinold, and Hillshire purchase sows from farmers located throughout the United States.  This Court has subject matter jurisdiction over this action and jurisdiction over the parties pursuant to 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

7.      Defendants have consented to venue and personal jurisdiction in this District.

## III.

## **DEFENDANTS AND THE PROPOSED TRANSACTION**

8. Tyson Foods, Inc. is a Delaware corporation with its principal place of business in Springdale, Arkansas. In 2013, Tyson had total revenues of approximately $34.4 billion. Tyson is one of the world's largest meat companies. It produces, distributes, and markets chicken, beef, pork, and prepared food products. Tyson Hog Markets, Inc., a subsidiary of Tyson and Tyson Fresh Meats, Inc., purchases hogs for Tyson's hog processing facilities. Tyson does not process sows. Tyson does, however, buy and resell sows through Heinold. In 2013, Heinold had overall revenues of approximately $270 million.

9. The Hillshire Brands Company is a Maryland corporation with its principal place of business in Chicago, Illinois. Hillshire is a manufacturer and marketer of brand name food products for the retail and foodservice markets, including sausage, hot dogs, and luncheon meats. Its brand names include Jimmy Dean, Ball Park, and Hillshire Farm. Hillshire's total revenues were approximately $3.9 billion for the year ended June 29, 2013.

10. On July 1, 2014, Tyson and Hillshire entered into a definitive agreement for the acquisition by Tyson of Hillshire. On July 16, 2014, Tyson commenced a tender offer to purchase all of Hillshire's outstanding shares. The tender offer is conditioned on the valid tendering, without a valid withdrawal, of at least two-thirds of Hillshire's outstanding stock prior to expiration of the offer. As of August 12, over 70% of Hillshire's outstanding shares had been validly tendered and not validly withdrawn.

## IV.

## TRADE AND COMMERCE

### A.    The Sow Packing Industry

11.    Sausage producers primarily buy sows from marketers such as Heinold. Marketers purchase sows from individual farmers and assemble truck loads (with approximately 100 sows per load) for delivery to sausage plants. Marketers utilize buying stations to procure sows from farmers. A buying station includes space for offloading and loading sows, pens for holding the sows, scales, and administrative space. Sows are usually kept at a buying station no longer than three days and may be shipped out to a slaughterer the same day they arrive from a farm.

12.    Larger marketers have multiple buying stations. Heinold operates eight buying stations located in Atkinson, Illinois; Burlington, Indiana; Randall and Sioux City, Iowa; Jones, Michigan; Windom, Minnesota; Monroe City, Missouri, and St. Paul, Nebraska. Heinold buys sows from more than 2,400 farmers located throughout the United States. In 2013, Heinold purchased about 660,000 sows from farmers in the United States, paying more than $150 million to farmers.

13.    Hillshire slaughters sows and produces sausage at a facility in Newbern, Tennessee. Whereas most other sausage producers purchase nearly all of their sows from marketers, Hillshire is unique among major sausage manufacturers in that it purchases over half of its sows directly from farmers. The sows that Hillshire purchases from farmers are usually transported directly by truck from the farm to Hillshire's Tennessee facility. Hillshire purchases sows from approximately 100 farmers located throughout

the United States.  In 2013, it purchased more than 250,000 sows from farmers in the United States, paying approximately $80 million to farmers.

14.     The frequency and number of a particular farmer's sales of sows depends on the size of its breeding operations.  Larger operations sell sows every week; smaller operations sell sows much less frequently.  Some operations are of a sufficient size to be able to sell sows by the truckload whereas many farms sell lots of smaller sizes.

B.     **The Relevant Market**

15.     There are no economic uses for slaughtered sows other than for the production of pork sausage.  It is highly unlikely that a small decrease in the prices paid for sows would be rendered unprofitable by a switch of the sale of sows to other purchasers for any other use.

16.     The purchase of sows from farmers is a relevant antitrust product market.  In part because income from sow sales represents a small percentage of the overall revenues of a hog breeding operation, a small decrease in the prices farmers receive for sows typically would not affect farmers' decisions about when to slaughter sows, the size of their breeding operations, or whether to abandon their investments in hog breeding altogether.  Although the sale of sows constitutes a small percentage of overall revenues, farmers rely on this source of income as an important contribution to their earnings.

17.     Hog breeding operations are concentrated in the central area of the United States, including Iowa, Illinois, and Missouri, and in North Carolina.  All else equal, farmers prefer to transport sows as short a distance as possible, unless the price that the farmer receives justifies shipping the sows farther.  For instance, Hillshire sometimes fully compensates the farmer for transportation costs, which makes it economical for

farmers located hundreds of miles away from the Hillshire plant to sell to Hillshire. Sows are commonly shipped throughout the central area of the United States where the purchasing facilities of the merging parties are located and where a major portion of sow sales and slaughter take place. The overwhelming majority of sow purchases occur within this region. As sows are also shipped even farther distances to slaughter facilities throughout the nation, the United States is the outer bounds of a relevant geographic market.

18.     Thus, the purchase of sows from farmers in the United States is a relevant market (*i.e.*, a line of commerce and a section of the country) under Section 7 of the Clayton Act, 15 U.S.C. § 18.

C.     **Anticompetitive Effects**

19.     The acquisition of Hillshire by Tyson will combine two of the major purchasers of sows from farmers in the United States and create a company that would account for approximately 35% of all purchases in this market. Using the Herfindahl-Hirschman Index (HHI), a standard measure of concentration, the post-acquisition HHI would increase by more than 500 points, resulting in a post-acquisition HHI of approximately 2100.

20.     Farmers have benefited from competition between Tyson and Hillshire in a variety of respects. Farmers track offering prices from sow purchasers. For many farmers, at particular points in time, the merging parties constitute their two best alternatives. The purchasing facilities of the merging parties are two of a small number of potential buyers from whom farmers seek or receive quotes. As the transaction eliminates a significant competing bidder, bidding is likely to be less aggressive and

farmers are likely to receive lower prices for sows. As the prices offered decrease, farmers may ship sows to more distant purchasers. This additional shipping time and cost constitute an economic inefficiency that would follow from the elimination of competition between Hillshire and Tyson.

21. Tyson's acquisition of Hillshire would eliminate actual and potential competition between Heinold Hog Markets and Hillshire, leaving farmers with fewer outlets for their sows and lower prices in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

### D. Absence of Countervailing Factors

22. Successful entry or repositioning into the market for the purchase of sows from farmers would not be timely, likely, or sufficient to deter the anticompetitive effects resulting from this transaction. Slaughterers that do not currently purchase sows directly from farmers are unlikely to begin to do so because they value the sorting and weighing services performed by marketers at their buying stations. Entry by new marketers or expansion by existing marketers sufficient to replace the market impact of the loss of competition resulting from the transaction is also unlikely. The process of locating and acquiring land, obtaining permits, and constructing buying stations would require an extensive period of time and would be unlikely to occur in response to anticompetitive price decreases resulting from the merger.

## V.

## VIOLATION ALLEGED

23. Plaintiffs hereby incorporate paragraphs 1 through 22.

24. Unless enjoined, Tyson's proposed acquisition of Hillshire is likely to substantially lessen competition and restrain trade in the purchase of sows from farmers in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in the following ways:

 a. actual and potential competition between Tyson and Hillshire in the purchase of sows from farmers in the United States will be eliminated;

 b. competition in the purchase of sows from farmers in the United States will be substantially lessened; and

 c. prices paid to farmers in the United States for sows will likely decrease.

## VI.

## **REQUEST FOR RELIEF**

25. Plaintiffs request that:

 a. Tyson's proposed acquisition of Hillshire be adjudged and decreed to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

 b. Defendants and all persons acting on their behalf be preliminarily and permanently enjoined and restrained from consummating the proposed transaction or from entering into or carrying out any contract, agreement, plan, or understanding, the effect of which would be to combine Tyson and Hillshire;

 c. Plaintiffs be awarded its costs for this action; and

 d. Plaintiffs receive such other and further relief as the Court deems just and proper.

Dated this 27th day of August, 2014.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

_____
WILLIAM J. BAER (D.C. BAR #324723)
Assistant Attorney General for Antitrust

_____
DAVID I. GELFAND (D.C. BAR #416596)
Deputy Assistant Attorney General

_____
PATRICIA A. BRINK
Director of Civil Enforcement

_____
WILLIAM H. STALLINGS
(D.C. BAR #444924)
Chief
Transportation, Energy & Agriculture Section

_____
CAROLINE E. LAISE
Assistant Chief
Transportation, Energy & Agriculture Section

_____
ANGELA L. HUGHES (D.C. BAR # 303420)*
KATHERINE A. CELESTE
JILL A. PTACEK
Attorneys
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 8000
Washington, DC 20530
Telephone: (202) 307-6410
Facsimile: (202) 307-2784
E-mail: Angela.Hughes@usdoj.gov


Attorneys for the United States


*Attorney of Record

10

FOR PLAINTIFF STATE OF ILLINOIS

LISA MADIGAN
Attorney General

CARA HENDRICKSON
Chief, Public Interest Division

ROBERT PRATT
Chief, Antitrust Bureau
Public Interest Division

*[signature]*
BLAKE HARROP
Senior Assistant Attorney General
Illinois Bar No. 99000
100 West Randolph Street
Chicago, Illinois 60601
Ph: 312-814-1004
Fax: 312-814-4209
bharrop@atg.state.il.us

FOR PLAINTIFF STATE OF IOWA:

THOMAS J. MILLER
Attorney General

_____
Layne M. Lindebak (IA Bar AT0004755)
Assistant Attorney General
Special Litigation Division
Hoover Office Building-Second Floor
1305 East Walnut Street
Des Moines, IA 50319
Tel: (515) 281-7054
Fax: (515) 281-4902
Layne.Lindebak@iowa.com

Dated: August 26, 2014

FOR PLAINTIFF STATE OF MISSOURI:

**CHRIS KOSTER**
Attorney General

_____
ANNE E. SCHNEIDER
Assistant Attorney General/Antitrust Counsel
KYLE A. POELKER
Assistant Attorney General

Office of the Missouri Attorney General
P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-7445
Fax: (573) 751-2041
Email: Anne.Schneider@ago.mo.gov
Email: Kyle.Poelker@ago.mo.gov